## AFFIDAVIT OF SHEILA R. MAGOON

I, Sheila R. Magoon, being duly sworn, hereby depose and state as
follows:

1.    I am a Special Agent of the Federal Bureau of
Investigation ("FBI"), a position I have held for over four years
and assigned to the Boston Division since January 2004.  I am a
certified public accountant and am currently assigned to the
Economic Crimes Squad.  My duties include the investigation of
violations of federal criminal laws, including the wire and mail
fraud statutes.

2.    I base this affidavit on information learned through my
interview of David Caron ("Caron"), the Chief Financial Officer
("CFO") at Cambium Learning, Incorporated ("Cambium"), and Steve
Anderson ("Anderson"), part owner of J and J Group, Incorporated
("J and J"), and through a review of bank records and documentary
evidence.  In particular, I have gathered information regarding
transfers of funds out of a bank account of Sopris West
Educational Services, Incorporated ("Sopris"), maintained at Mile
High Banks, in Longmont, Colorado.  Sopris is a subsidiary of
Cambium.  I submit this affidavit based upon my personal
knowledge derived from the information listed above.

3.    This Affidavit is made in support of an arrest warrant
and criminal complaint charging JEFFREY WINDLE with wire fraud,
in violation of 18 U.S.C. §1343, and mail fraud, in violation of

18 U.S.C. §1341.

4.     This affidavit does not contain all of the information known to me and other law enforcement officers regarding this criminal investigation, but only those facts which are sufficient to establish probable cause for the issuance of the requested warrant.

## WIRE FRAUD AND MAIL FRAUD

5.     On April 26, 2008, the FBI was contacted by Eric Van Ert ("Van Ert"), who identified himself as Managing Director of VSS-Cambium Holdings, LLC, the parent company of Cambium, located in Natick, Massachusetts.  Van Ert had received information that WINDLE, Director of Budget and Finance at Cambium, had misappropriated approximately $5,000,000 from the Sopris account at Mile High Banks, using a portion of the funds to purchase expensive pleasure boats.  Investigation to date has determined the following:

6.     WINDLE was employed by Cambium from early 2004 until 2008.  Among his responsibilities as Director of Budget and Finance, WINDLE had authority for the payment of funds out of and transfer of funds from, the Sopris account at Mile High Banks to the Cambium account at Citizens Bank, and initiating payments to vendors from the Cambium account at Citizens Bank.

7.     During the past few weeks, Caron was advised that

2

vendors of Cambium were not receiving timely payments from
Cambium.

8.   On April 25, 2008, Caron received a telephone call from
the Bostonian Group stating that the company's health care
provider, Blue Cross and Blue Shield, would be canceling
Cambium's account unless a wire transfer was received for payment
by April 25, 2008.   WINDLE was supposed to have made a payment of
approximately $870,000 prior to April 25, 2008, but had failed to
do so.

9.   On April 26, 2008, Caron became aware that Nancy Young
("Young"), the Senior Staff Accountant at Cambium, had not been
receiving the statements for the Sopris account at Mile High
Banks since approximately June of 2007.   Instead, WINDLE had
adopted a practice of providing spreadsheets to Young, which he
claimed had come from the bank, instead of account statements.
These spreadsheets falsely reported the balance of funds in the
Sopris account, thereby concealing unauthorized transfers that
WINDLE had been making.

10.   On April 26, 2008, Caron became aware that the mailing
address for the Sopris account at Mile High Banks had been
changed by WINDLE in June of 2007.   Prior to June 2007, the
Sopris monthly account statements had been mailed to a company
address in Colorado which then forwarded the statements to Young

3

in Natick, Massachusetts. After June 2007, the account
statements were mailed and directed to WINDLE's attention, at the
Cambium address in Natick, Massachusetts.

11. A search of WINDLE's email account at Cambium revealed
an email from Joe Abeyta ("Abeyta"), an employee at Mile High
Banks, to WINDLE, dated June 22, 2007, acknowledging the receipt
of WINDLE's email and original address change form for the Sopris
account. In the email, Abeyta indicates that the address change
had been processed and that the account statements will be sent
to the Natick address.

12. On April 26, 2008, Caron discovered an email from
Abeyta, at Mile High Banks, to WINDLE, confirming a wire transfer
sent to J and J, at Rockland Trust Bank, in the amount of
$125,000, dated March 24, 2008. J and J operates a marina, and
is engaged in the sale and servicing of boats and yachts.
Cambium does no business with J and J, and there is no apparent
business purpose for such a payment.

13. Upon seeing the $125,000 wire transfer to J and J,
Caron became suspicious and checked other emails of WINDLE's.
Caron found other wire transfers from the Sopris account to other
companies with which Cambium did not do business, which transfers
had not been authorized by Cambium.

14. On April 26, 2008, Caron contacted Van Ert, who told

4

him that a friend of his who was employed at J and J, had informed Van Ert that WINDLE was about to make a sizable investment into J and J.

15. On April 27, 2008, Caron left a voice mail message for WINDLE advising him that he was suspended from his job and that he was not to report to work.

16. On April 28, 2008, WINDLE left a voice mail message for Caron implying that he was going to commit suicide, and stating that he was sorry and asked for forgiveness.

17. On April 28, 2008, Caron reviewed Sopris account financial records and highlighted wire transfers that he deemed as unauthorized based on his position as CFO. Caron also reviewed backup documentation for those suspicious wire transfers which had been received from Mile High Banks. The records included wire transfer request forms, and emails to and from WINDLE, in Massachusetts, and Mile High Banks, in Colorado.

18. The information relating to the Sopris account revealed 12 unauthorized wire transfers. A summary spreadsheet attached hereto as "Exhibit A" contains information pertaining to each of the unauthorized wire transfers from the Sopris account at Mile High Banks which were initiated by WINDLE.

19. One of the wire transfers in the spreadsheet indicates that on October 16, 2007, $807,500 was transferred from the

5

Sopris account to an account at Slade's Ferry Bank, in Somerset, Massachusetts, held in the name of J and J.

20. Based on a review of the suspicious transactions, it appears that WINDLE diverted a total of $4,240,897.63 from the Sopris account to various entities, without the knowledge or authorization of Sopris and Cambium.

21. Anderson, part owner of J and J, advised that WINDLE purchased two boats from his company. One purchase of a 46 foot Ocean Yacht was completed in October of 2007, at which time J and J received a wire transfer of $807,500, on October 16, 2007, from the Sopris account. The other purchase of a 24 foot Captain's Launch was completed in March of 2008, at which time J and J received a wire transfer of $125,000, on March 24, 2008, from the Sopris account.

22. Anderson advised that WINDLE claimed to be the CFO and part owner of Cambium. WINDLE claimed that when Cambium was sold in 2007 he netted $60,000,000. WINDLE also stated to Anderson that Sopris was one of his own personal investment accounts. WINDLE and Anderson negotiated a buy/sell and an employment agreement whereby WINDLE would become the CFO of J and J and purchase a one third interest in the company for $7,500,000. The deal was supposed to close on May 1, 2008.

23. Anderson said that at various times, WINDLE has stored

6

other boats at J and J, which Anderson believed had been purchased from Allen Harbor, a marina located in Harwichport, Massachusetts.

24.   A review of the suspicious wire transfers indicated that there were two unauthorized wire transfers from the Sopris account to Allen Harbor Service and Allen Service, Incorporated. The first wire transfer is dated June 15, 2007, in the amount of $274,023.95, to an Allen Harbor Service account at Cape Cod Cooperative Bank.   The second wire transfer is dated October 30, 2007, in the amount of $680,681, to an Allen Services, Incorporated account at Cape Cod Cooperative Bank.

25.   On April 29, 2008, Caron received a letter from WINDLE. I have read this letter, and in it, WINDLE makes several statements which include the following:

- Words cannot explain the deep pain and sorrow I am feeling right now

- I know this does not help you in the utter dismay I have put you in

- I have been living a life of lies as long as I can remember, trying to be someone I wasn't

- Trying to feel self worth through things instead of within

- The only way to stop this pain once and for all is to end my life

7

## CONCLUSION

Based on the foregoing, there is probable cause to believe
that WINDLE participated in wire fraud in violation of Title 18,
United States Code, Section 1343; and mail fraud in violation of
Title 18, United States Code, Section 1341.

Signed under the penalties of perjury this ___th day of May 2008.

Sheila R. Magoon
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this ___st day of May 2008.

Judith G. Dein
United States Magistrate Judge

8

**Mile High Banks**
**Sopris West Educational Svcs. Inc.**
**Account Number 80004710**
**Fraudulent Transactions**

| Date | Checking Account Wire Amount | Receiving Bank | Beneficiary | Beneficiary Account Number |
|---|---|---|---|---|
| 6/15/07 | 274,023.95 | Cape Cod Cooperative Bank | Allen Harbor Service | 9020008109 |
| 6/21/07 | 1,116,757.68 | Bank of America | First American Title Insurance Co | 5480639193 |
| 9/7/07 | 450,000.00 | Sovereign Bank New England | Adkins, Kelston & Zavez, P.C. | 61000018558 |
| 9/11/07 | 85,000.00 | Slade's Ferry Bank | J & J Group, Inc. | 17135971 |
| 10/16/07 | 807,500.00 | Slade's Ferry Bank | J & J Group, Inc. | 17135971 |
| 10/30/07 | 680,681.00 | Cape Cod Cooperative Bank | Allen Services, Inc. | 9020008109 |
| 11/9/07 | 100,000.00 | TD Banknorth, Inc. | Francis E. Woelfel, Inc. | 18737220 |
| 2/12/08 | 101,935.00 | TD Banknorth | Trans-Atlantic, Inc. | 19426301 |
| 2/28/08 | 200,000.00 | LaSalle Bank Midwest | Suburban Supply | 2284000236 |
| 3/6/08 | 100,000.00 | Rockland Trust | Wychview Inc. | 2909001543 |
| 3/24/08 | 125,000.00 | Rockland Trust | J & J Group, Inc. | 17150467 |
| 4/3/08 | 200,000.00 | LaSalle Bank | Suburban Supply Co. | 2284000236 |

**Total** **$4,240,897.63**

Exhibit A